**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Saphira ANDRE, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 21, 2010.

Filed March 29, 2011.

John M. Morganelli, Assistant District Attorney, Easton, for Commonwealth, appellant.

Dennis G. Charles, Allentown, for appellee.

BEFORE: BOWES, DONOHUE, and OLSON, JJ.

OPINION BY BOWES, J.:

The Commonwealth appeals the trial court's November 6, 2009 order declaring a mistrial after the jury, in the second phase of a bifurcated trial, could not determine whether Saphira Andre was legally insane. After careful review, we affirm.

The salient factual and procedural background is as follows. The Commonwealth originally charged Appellee with arson en-

dangering persons,[1] arson endangering property,[2] criminal mischief[3] and risking catastrophe.[4] Subsequently, the Commonwealth dropped the charges of arson endangering property and risking catastrophe. The charges arose from a February 9, 2008 fire at a residence in Upper Mount Bethel Township, Northampton County.

Following the unsuccessful litigation of an omnibus pre-trial motion, new counsel entered an appearance on behalf of Appellee. Thereafter, on March 3, 2009, counsel filed a notice of defense of insanity and notice of expert evidence of mental condition. According to Appellee, she suffered from post-traumatic stress disorder, major depressive disorder with psychotic features, anxiety and panic attacks, and dissociative disorder. The trial court provided the Commonwealth with an opportunity to obtain an independent psychiatric examination within thirty days of April 13, 2009, and to submit a report within fifty days of that order.

Subsequently, Appellee filed a supplemental omnibus pre-trial motion seeking a bifurcated trial and the exclusion of admissions she made during a police interrogation while allegedly suffering from carbon monoxide poisoning, hypoglycemia, and mental infirmity. Appellee based her request for a bifurcated trial on 50 P.S. § 7404(c). That statute provides:

> **(c) Bifurcation of Issues or Trial.—** Upon trial, the court, in the interest of justice, may direct that the issue of criminal responsibility be heard and determined separately from the other issues in the case and, in a trial by jury, that the issue of criminal responsibility be submitted to a separate jury. Upon a request for bifurcation, the court shall consider the substantiality of the defense of lack of responsibility and its effect upon other defenses, and the probability of a fair trial.

50 P.S. § 7404(c). In support of her position to bifurcate, Appellee averred several defenses. First, she argued that the fire at issue was the result of an electrical wire insulation failure. In the alternative, she alleged that she was involuntarily intoxicated due to carbon monoxide poisoning and did not have the requisite *mens rea* to commit the crime. Finally, she asserted that she was legally insane at the time of the fire. The trial court granted the motion to bifurcate. Thereafter, the first jury found that Appellee committed the act of setting the fire.

A second jury was impaneled to determine Appellee's criminal responsibility at the time of the act. Following the second trial, the trial court presented the jury with a verdict slip with two questions. The first inquiry was whether Appellee was not guilty by reason of legal insanity.[5] The trial court instructed the jury that if it determined Appellee was not guilty due to legal insanity, it need not reach the second query. However, if the jury unanimously agreed that Appellee failed to prove she was legally insane, it was to determine if she was guilty but mentally ill.

The jury was unable to reach a unanimous verdict on the issue of insanity and the trial court declared a mistrial and excused the jury. Nevertheless, a handwritten note from the jury included statements

---

1. 18 Pa.C.S. § 3301(a).

2. 18 Pa.C.S. § 3301(c)(3).

3. 18 Pa.C.S. § 3304(a)(1).

4. 18 Pa.C.S. § 3302(b).

5. Three of the four expert witnesses called to testify, two of Appellee's expert witnesses and one of the Commonwealth's experts, agreed that Appellee was legally insane when she ignited the fire.

that the entire jury agreed that Appellee was mentally ill and that she wanted to commit suicide. The jury in its note further indicated that it could not agree if Appellee "knew what she was doing was wrong" or "knew she was starting fires[.]" Jury Note, Exhibit 4, 11/6/09.

Despite the jury's indication that it could not agree on Appellee's criminal responsibility, i.e., whether she knew that she was starting a fire, and if she did know, did not understand that it was wrong, the Commonwealth contended that the court should proceed to sentence Appellee as though she were guilty, or in the alternative, guilty but mentally ill. The Commonwealth based its position on the second jury's handwritten note that Appellee was mentally ill and on the first jury's determination that she committed arson and criminal mischief. The trial court refused to proceed in that manner and indicated that it would schedule a new trial to determine Appellee's criminal responsibility.

Before that trial occurred, the Commonwealth filed the instant notice of appeal, pursuant to Pa.R.A.P. 311(d), asserting that the order declaring the mistrial substantially handicapped its prosecution. The trial court directed the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth complied, and the trial court prepared a Pa.R.A.P. 1925(a) opinion. The matter is now ready for our review. The Commonwealth raises the following four issues.

A. Whether the trial court, in a bifurcated trial pursuant to 50 P.S. [§ ] 7404(c), erred in failing to enter a verdict of "guilty" where the first jury unanimously found the defendant guilty, and the second jury was deadlocked on the issue of the defendant's criminal responsibility.

B. In the alternative, whether the trial court erred in failing to enter a verdict of "guilty but mentally ill" where the first jury in a bifurcated trial pursuant to 50 P.S. [§ ] 7404(c) unanimously found the defendant guilty and the second jury unanimously found the defendant to be mentally ill.

C. Whether the trial court, in a bifurcated trial pursuant to 50 P.S. [§ ] 7404(c), abused its discretion in excluding evidence that the defendant had been found guilty of the crimes charged in the first trial.

D. Whether the trial court abused its discretion in preparing and submitting to the jury an improper verdict slip.

Commonwealth's brief at 7.

Before we address the Commonwealth's issues, we must first decide whether this Court has jurisdiction. As noted, the Commonwealth filed the instant appeal pursuant to Pa.R.A.P. 311(d), which permits a Commonwealth appeal from an interlocutory order in a criminal action "where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

Our Supreme Court has consistently held that the rule applies to pretrial rulings that result in the suppression, preclusion, or exclusion of Commonwealth evidence. *Commonwealth v. Shearer*, 584 Pa. 134, 882 A.2d 462, 467 (2005); *Commonwealth v. Cosnek*, 575 Pa. 411, 836 A.2d 871, 877 (2003); *see also Commonwealth v. Minich*, 4 A.3d 1063 (Pa.Super.2010). Accordingly, the rule is ordinarily invoked following a trial court's suppression order or an order excluding evidence based on a motion *in limine*.

■ We acknowledge that when the Commonwealth objects to the declaration of a mistrial or to the crafting of a jury verdict slip, the issue will not be reviewable if the case proceeds to final judgment. This position flows from the fact that the Commonwealth cannot appeal the decision if they sustain a conviction, as it will not be an aggrieved party. *See Commonwealth v. Dellisanti,* 831 A.2d 1159, 1164 n. 7 (Pa.Super.2003), *reversed* on separate grounds, 583 Pa. 106, 876 A.2d 366 (2005). Furthermore, it would not be permitted to appeal from Appellee's acquittal due to double jeopardy implications. *Minich, supra.*

Nevertheless, this Court has found no Pennsylvania case law to support the granting of a Commonwealth appeal under Pa.R.A.P. 311(d) from an order declaring a mistrial after a jury deadlocked, nor has the Commonwealth supplied any support for that position. Indeed, Pa.R.A.P. 311(d) has been limited to pre-trial rulings precisely because to hold otherwise would permit the Commonwealth to appeal mid-trial from adverse rulings entered by the trial court that might hamper the prosecution.

Instantly, the trial court's November 6, 2009 ruling was not a pre-trial decision or a determination that precluded the Commonwealth from introducing certain evidence. Thus, the November 6, 2009 order does not fall within the parameters of Rule 311(d) as delineated by our Supreme Court. Hence, insofar as the Commonwealth challenges the trial court's tailoring of the jury verdict slip and its decision to grant a mistrial rather than proceeding to sentence Appellee, we decline to extend Pa.R.A.P. 311(d) to such a situation.[6]

■ However, this does not end our jurisdictional inquiry. The Commonwealth's first two issues and its final claim pertain to an order that awarded a new trial and Pa.R.A.P. 311(a)(6) confers this Court with jurisdiction in those circumstances. Pa.R.A.P. 311(a)(6) states that in a criminal proceeding, the Commonwealth may appeal from the decision to grant a new trial when "the Commonwealth claims that the lower court committed an error of law."[7] While we are cognizant that the

---

6. We are cognizant that in addition to the Commonwealth's challenge to the court's refusal to sentence Appellee, it alleges that the trial court erred in barring the Commonwealth from introducing evidence that Appellee was found guilty of committing the act of setting the fire in the preceding trial. In *Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985), a mistrial resulted and the Commonwealth appealed, asserting that a pre-trial order suppressing certain Commonwealth evidence substantially handicapped the prosecution. Our Supreme Court held that any pre-trial appealable orders retain their appealability if appealed within thirty days of the order. *Id.* at 379. The Court reasoned that a mistrial for manifest necessity does not prohibit re-prosecution and, after a mistrial is declared, the procedural posture of the case is as though a trial never occurred. *Id.* Herein, the trial court granted Appellee's motion *in limine* and precluded the Commonwealth from referencing that a previous jury

had determined that Appellee committed the act of setting the fire. The decision by the trial court was rendered on November 2, 2009. The Commonwealth filed the instant appeal within thirty days of that order. Therefore, this Court would have jurisdiction under Rule 311(d) to entertain the Commonwealth's third issue that challenges the trial court's order of November 2, 2009, precluding Commonwealth evidence.

7. We recognize that the Commonwealth's final issue is phrased as a discretionary challenge to the trial court's construction of its verdict slip. However, it is well settled that an abuse of discretion includes committing an error of law. Since the Commonwealth's argument relates to the trial court's articulation of the law relative to the doctrines of legal insanity and guilty but mentally ill, we conclude that the issue is properly before us. *See Commonwealth v. Dorm,* 971 A.2d 1284

Commonwealth neglected to invoke this rule, the issue is jurisdictional and we may raise it *sua sponte*. *Estate of Considine v. Wachovia Bank*, 966 A.2d 1148, 1151 (Pa.Super.2009). Accordingly, we have jurisdiction over this appeal pursuant to Pa. R.A.P. 311(a)(6). *See Commonwealth v. Dorm*, 971 A.2d 1284 (Pa.Super.2009).

■ Preliminarily, we find it helpful to carefully delineate the difference between the Commonwealth's burden of proving the *mens rea* element of an offense and a defendant's burden of proving a lack of criminal responsibility when the defense of insanity is advanced. We do so due to the confusion created in this case as to what the respective juries were called upon to determine. The distinction is particularly important herein because Appellee asserts that the jury at the first trial decided only that she committed the *actus reus* of the crime; the act of setting the fire. The Commonwealth's position, however, necessarily contends that the first jury also decided that Appellee possessed the requisite *mens rea*.[8]

■ It is hornbook law that *mens rea* is the state of mind a defendant must possess to commit a crime. The term *mens rea* is Latin for guilty mind and is defined as "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime[.]" Black's Law Dictionary, (3rd Pocket ed.2006). Both arson and criminal mischief, the crimes relevant herein, set forth a *mens rea* requirement. Thus, to achieve a guilty verdict pursuant to the aforementioned crimes, the Commonwealth must prove Appellee had the requisite criminal intent attendant to each crime.

However, establishing *mens rea* does not automatically result in a guilty verdict when the defense proffers an insanity defense. When a defendant seeks to prove legal insanity, he is asserting that a finding of guilt is foreclosed based on the lack of criminal responsibility. To successfully assert a legal insanity defense, a defendant must show that, "at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong." 18 Pa.C.S. § 315. As our Pennsylvania Suggested Standard Jury Instructions provide, "Stated more simply, a person is legally insane if at the time of committing an alleged crime that person is, as the result of mental disease or defect, either incapable of knowing what he or she is doing, or that person does know what he or she is doing, is incapable of judging that it is wrong." Pennsylvania Suggested Standard Criminal Jury Instructions § 5.01A(2).

■ These definitions of the legal insanity defense, commonly known as *M'Naghten's* Rule, are derived from the seminal case of *Regina v. M'Naghten*, 8 Eng. Rep. 718 (1843) where the court held that

> jurors ought to be told ... that to establish a defence on the ground of insanity, it must be clearly proved that, at the

---

(Pa.Super.2009) (addressing Commonwealth appeal from the grant of a new trial at the request of the defendant based on jury instructions).

8. The Commonwealth did not provide a transcript of the jury instructions from the first trial thereby preventing this Court from ascertaining whether the first jury was given instructions on criminal intent. While this Court made unofficial efforts to obtain that transcript, it is the burden of the appellant to ensure that the certified record is complete. *Commonwealth v. Williams*, 552 Pa. 451, 715 A.2d 1101 (1998); *Commonwealth v. Preston*, 904 A.2d 1 (Pa.Super.2006) (*en banc*).

time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong.

*Id.* at 722. The rule sets forth two separate and distinct aspects of the defense in Pennsylvania: a cognitive incapacity prong and a moral incapacity provision. Where the defendant alleges that he did not know what he was doing, he is presenting a cognitive incapacity insanity defense. On the other hand, if the defendant submits that he did not understand that what he was doing was wrong, he is advancing a moral incapacity defense.

Our Supreme Court's decision in *Commonwealth v. Rabold*, 597 Pa. 344, 951 A.2d 329 (2008), is the most recent pronouncement discussing *mens rea*, legal insanity, and the guilty but mentally ill verdict. In that decision, our Supreme Court touched upon the legal distinction between contesting the element of *mens rea* and a defendant's criminal responsibility when a legal insanity defense is proffered. The *Rabold* Court considered only a challenge to the guilty but mentally ill jury instructions given therein. The Court determined that the defendant's sole preserved issue was that the jury instructions did not articulate that the Commonwealth had the burden of proving guilt beyond a reasonable doubt. The Court, citing an Illinois Supreme Court decision, opined that:

> jurors' consideration of these issues [of commission of the offense, insanity, and mental illness] is carefully channeled. Under the [guilty-but-mentally-ill] statutory scheme, the jury does not consider mental illness until it has first decided the defendant's claim of insanity. Thus, the jury does not determine insanity and mental illness simultaneously. The jury must consider first whether the defendant committed the acts forming the basis for the charged offense, next whether the defendant was insane, and finally whether the defendant was mentally ill. We believe that the sequence in which these issues are resolved by the jury further demonstrates that the defense in a [guilty-but-mentally-ill] case does not have the burden of establishing conflicting propositions at the same time.

*Rabold, supra* at 344 (quoting *People v. Lantz*, 186 Ill.2d 243, 238 Ill.Dec. 592, 712 N.E.2d 314, 320–321 (1999) (brackets in original)). Significantly, the Court also recognized that there is a "conceptual overlap, and distinction, between rebutting the Commonwealth's evidence concerning criminal intent as an element of the offense, and contesting the defendant's moral culpability via an insanity defense." *Id.* at 342.

Confusion exists in the present case because our courts have indicated on more than one occasion that a jury must determine the defendant's guilt of the substantive offense **before** proceeding to consider the insanity defense and mental illness. *See id.* at 333 (quoting the trial court's jury instruction, which stated, "So first you must find beyond a reasonable doubt, which is the Commonwealth's burden, that he committed the crimes charged under those elements I gave you for each of the crimes charged before. If you find that, then the burden shifts, and it's by a preponderance of the evidence that you find those different prongs of the insanity defense, that you look at those different prongs."); *Commonwealth v. duPont*, 730 A.2d 970, 979 (Pa.Super.1999) ("First, a determination is made as to whether the Commonwealth has proven the defendant's guilt of every element charged beyond a reasonable doubt. Second, a determination

must be made as to whether the defendant has proven insanity by a preponderance of the evidence."); *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106, 1127 (1988).[9]

 This, of course, may be conceptually difficult to understand since one aspect of Pennsylvania's insanity test is that the defendant did not know what he or she was doing. If a person does not know what he or she is doing, it is hard to conceive how that individual possessed the required *mens rea* to commit a crime. In fact, the statutory definitions of criminal intent regarding acting intentionally, knowingly, recklessly, and negligently foreclose a person from acting in any of those manners when he or she is not conscious at all of what he or she is doing. As the majority of the United States Supreme Court reasoned in *Clark v. Arizona,* 548 U.S. 735, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006), in distinguishing between the cognitive incapacity and moral incapacity prongs of the *M'Naghten* test, "In practical terms, if a defendant did not know what he was doing when he acted, he could not have known that he was performing the wrongful act charged as a crime." *Clark, supra* at 753–754, 126 S.Ct. 2709; *see also id.,* at 768 n. 38, 126 S.Ct. 2709 ("Not only does evidence accepted as showing insanity trump *mens rea,* but evidence of behavior close to the time of the act charged may indicate both the actual state of mind at that time and also an enduring incapacity to form the criminal state of mind necessary to the offense charged.").

 Nevertheless, it is possible that an individual has the necessary *mens rea* when he or she knows what he or she is doing, but does not know that it is wrong.

As an example, a defendant may intend to strike a person and knock that person unconscious, but incorrectly believe, due to a mental deficiency, that he is engaged in a boxing match. In such a situation, the defendant intends to commit the act; however, he does not believe that the action is wrong. Nonetheless, as noted *supra,* trial courts sometimes instruct a jury that it must first determine that the Commonwealth has proven beyond a reasonable doubt the criminal intent element of the crime before addressing the insanity defense. *Rabold, supra, duPont, supra; Trill, supra.* Such direction by a trial court, although consistent with some statements from this Court in the context of discussing the guilty but mentally ill verdict, is inconsistent with other pronouncements from this Court. For example in *Trill, supra,* at 1123 (emphasis added), this Court stated:

> [T]he legislature has determined that persons classified as guilty but mentally ill either lack the capacity to appreciate the wrongfulness of their conduct or are unable to conform their conduct to the requirements of the law. However, the General Assembly determined that this classification of individuals is capable of possessing the requisite *mens rea* for the attachment of criminal responsibility. In other words, those individuals who have been found guilty but mentally ill are both "sick" *and* "bad" (i.e., criminally responsible). On the other hand, defendants who have been adjudged insane are defined as laboring under a defect of reason so grave as not to have known the nature and quality of the acts they were doing, or if they did know the nature and quality of the acts, they were unable to comprehend that what they

---

9. It should be noted, however, that the aforementioned cases were discussing the insanity defense in the context of the guilty but mentally ill statute, *infra* at 961–62, which requires the Commonwealth to prove each element of the criminal offense.

were doing was wrong. **In this classification, the legislature found that such individuals were incapable of forming the intent necessary to impose criminal liability.**

However, the *Trill* Court also reasoned that before determining the issue of insanity, the Commonwealth must prove each element of the offense charged. *Id.* at 1127. Thus, *Trill* provides that the Commonwealth must establish criminal intent before the issue of insanity is reached; however, the defense of legal insanity can, on those occasions when one is asserting cognitive incapacity, render a person incapable of forming criminal intent.[10] Concomitantly, the *M'Naghten* Rule can override the element of *mens rea* where the defendant proves the moral incapacity aspect of his defense by a preponderance of the evidence.

 Phrased another way, legal insanity does not necessarily eliminate *mens rea*, although it may; nor, of course, does the Commonwealth's proof of the *mens rea* element of the offense eliminate the possibility of the jury concluding that an individual is legally insane and therefore not criminally responsible. This, however, does not end our analysis of the law relative to the legal insanity defense, since an assertion of that defense automatically gives rise to the alternative verdict of guilty but mentally ill. Indeed, unless a

person pleads guilty but mentally ill, the guilty but mentally ill verdict only arises in the context of a legal insanity defense.

Accordingly, even if the Commonwealth proves each of the elements of the crimes charged beyond a reasonable doubt and the defendant fails to show by a preponderance of the evidence that he is legally insane, the jury must still consider whether the defendant was mentally ill at the time of the commission of the act. Pursuant to 18 Pa.C.S. § 314(a):

> A person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the commission of the offense and was not legally insane at the time of the commission of the offense.[11]

The term mentally ill is defined under Pennsylvania law as "[o]ne who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." 18 Pa.C.S. § 314(c)(1). Our courts have differentiated mental illness from legal insanity by distinguishing between the appreciation of wrongfulness factor under the mentally ill definition and the lack of knowledge of wrongfulness aspects of the

---

10. It should be acknowledged that the Pennsylvania Suggested Jury Instruction on legal insanity does **not** require a jury to determine that the Commonwealth prove the criminal intent element of the crime(s) charged before reaching an examination of the insanity defense. Rather, the jury only must be satisfied that the prosecution has established beyond a reasonable doubt that the defendant committed the criminal act. *See* Pennsylvania Suggested Standard Jury Instruction 5.01(A)(3). Further, in the instant case, the trial court did not state in its jury instructions in the second trial that the Commonwealth must prove each

element of the crime, including criminal intent, prior to the jury analyzing the insanity defense.

11. We are aware that the aspect of this provision that states the trier of fact must find beyond a reasonable doubt that the person was not legally insane appears inconsistent with 18 Pa.C.S. § 315, which requires the defendant to prove by a preponderance of the evidence that they were legally insane. *See Commonwealth v. Sohmer*, 519 Pa. 200, 546 A.2d 601 (1988).

legal insanity definition. *See Trill, supra* at 1123 (labeling the mentally ill as sick and bad and the legally insane as sick but not bad).

■ Hence, a jury must consider four possible verdicts when the defense of legal insanity is offered: not guilty, guilty, not guilty by reason of insanity, and guilty but mentally ill. Where the Commonwealth cannot prove that the defendant committed the criminal act, the defendant must be found not guilty. Once the Commonwealth establishes that the defendant committed the act, the jury next must consider whether the Commonwealth has proven the *mens rea*/criminal intent element of the crime(s) or whether the defendant has proven by a preponderance of the evidence that he did not know what he was doing and therefore could not possess the requisite *mens rea*. Should the Commonwealth be unable to prove criminal intent because the defendant has met his burden regarding the cognitive incapacity aspect of the insanity defense, then the defendant must be adjudicated not guilty by reason of insanity. On the other hand, if the prosecution cannot establish criminal intent irrespective of the insanity defense, then, of course, the verdict must be not guilty.

■ However, where the Commonwealth establishes each of the elements of the crime, including the *mens rea* element, and the defendant cannot prove that he did not know what he was doing, the jury still must determine whether he did not know what he was doing was wrong. Should the defendant show by a preponderance of the evidence that he did not know what he was doing was wrong, then he must be found not guilty by reason of insanity, but if the defendant fails to prove both aspects of the insanity defense then he must be found either guilty or guilty but mentally ill. Neither party has the burden of establishing mental illness; rather the jury must analyze the issue in light of the totality of the evidence presented by both parties. *See Commonwealth v. Sohmer*, 519 Pa. 200, 546 A.2d 601 (1988). If the jury is convinced that the prosecution has proven that the defendant committed the crime but the defendant was mentally ill, then it must find that person guilty but mentally ill. Where the jury does not conclude that the defendant is mentally ill and determines that the prosecution has proven all of the elements of the crime, then its verdict must be guilty.

Having outlined the law in Pennsylvania regarding the distinction between the *mens rea* element of a crime and criminal responsibility when the insanity defense is utilized, we now turn to the merits of the Commonwealth's issues. The Commonwealth's initial contention is that the trial court, in a bifurcated trial pursuant to 50 P.S. § 7404(c), erred in failing to enter a verdict of guilty where the first jury unanimously found Appellee guilty, and the second jury was deadlocked on the issue of criminal responsibility.

■ For the reasons that follow, we find the Commonwealth's first claim entirely devoid of merit.[12] The Common-

---

12. We are aware that Appellee contends that the Commonwealth has waived all of the issues raised on appeal by failing to timely object and by neglecting to follow Pa.R.A.P. 2117(c) and Rule 2119(e). Relative to Appellant's first two issues, we note that prior to the declaration of the mistrial the Commonwealth clearly articulated the position it now levels on appeal that Appellee should have

been sentenced as guilty or guilty but mentally ill. Although the district attorney stated that he took no position on declaring a mistrial, he actually argued that the court should proceed to sentencing. Thus, we do not find that the Commonwealth has waived its first two claims. With respect to the noncompliance with our appellate rules, we find that it has not inhibited our ability to review the

wealth's position that a guilty verdict is warranted because it met its burden of proof at the first trial while the defense was unable to meet its burden of proof at the second trial, demonstrates a fundamental misunderstanding of what the first and second juries were called upon to decide. The first trial did not determine Appellee's criminal responsibility. Where a defendant presents a legal insanity defense in a bifurcated trial, the second jury's function is solely to determine criminal responsibility. *See* 50 P.S. § 7404(c).

■ Without a determination of criminal responsibility, there can be no final adjudication of guilt. The Commonwealth's argument is akin to a defendant asserting after a jury deadlocks that he is innocent because the Commonwealth has failed to prove that he committed the crime. This position is absurd *ab initio*. Accordingly, the first jury's findings that Appellee committed the acts of arson and criminal mischief is insufficient to find her guilty of those crimes because her criminal responsibility had not been established unanimously.

■ Similarly, the Commonwealth's second claim is without merit. The Commonwealth maintains that the trial court erred in failing to enter a verdict of guilty but mentally ill where the first jury unanimously found Appellee guilty and the second jury unanimously found Appellee to be mentally ill. According to the Commonwealth, the jury's note indicated a unanimous determination that Appellee was mentally ill, but could not decide the issue of legal insanity. The Commonwealth reasons that "Because the jury at the first trial unanimously found Appellee guilty beyond a reasonable doubt of the offenses charged, the statutory definition of 'guilty but mentally ill' applies: she is guilty, she

is mentally ill, and she has not been found legally insane." Commonwealth's brief at 18. Further, the Commonwealth maintains that the note attached to the verdict slip was sufficient in substance although defective in form, and that the trial court "may mold a verdict to conform to the obvious intention of the jury[.]" Commonwealth's brief at 19 (citing *Commonwealth v. Dzvonick*, 450 Pa. 98, 297 A.2d 912, 914 n. 4 (1972)). Lastly, the Commonwealth asserts that the jury must be able to simultaneously consider the verdicts of not guilty by reason of insanity and guilty but mentally ill.

Appellee counters that the Commonwealth's position "begs the question of whether the jury ever reached a verdict; if the jury never reaches a verdict, there is nothing for the trial court to mold[.]" Appellee's brief at 2. Hence, Appellee submits that the jury did not render a verdict. In support of her argument, Appellee points out that only after the jury unanimously finds that she did not prove by a preponderance of the evidence that she was legally insane could the jury determine whether she was guilty but mentally ill. Since the jury was deadlocked on the issue of legal insanity, Appellee opines, the jury was "prohibited by law from rendering a verdict of guilty but mentally ill." Appellee's brief at 15. We agree.

■ Again, we note that the Commonwealth has misconstrued the role of the respective juries. The first trial did not determine Appellee's criminal responsibility. A finding of mental illness, combined with a determination that an illegal act occurred, does not *ipso facto* translate into a guilty but mentally ill verdict. The jury still must determine whether that individual knew the nature and quality of the act or if he or she did, whether he or she knew

claims. Therefore, we decline to find waiver

on that basis.

that it was wrong. This was the exact issue presented to the second jury. It is axiomatic that a person can be mentally ill and legally insane. As we discussed in *Trill, supra* at 1128, "[a]ll individuals who are legally insane are also mentally ill. But the converse of the statement, that all persons who are mentally ill are also legally insane, is false." If the individual is legally insane, then he or she is not guilty of the offense charged because legal insanity supersedes *mens rea.* Only if the jury finds that the defendant is not legally insane does it consider if the guilty but mentally ill verdict applies. *Rabold, supra* at 344. Put another way, the jury must unanimously agree that the defendant was legally sane at the time of the crime before it can render a guilty verdict when the defense of legal insanity has been proffered. Such a result is logical because the insanity defense eliminates the defendant's criminal responsibility. To hold as the Commonwealth wishes would render the legal insanity defense impotent. Indeed, under the Commonwealth's reading of the law, a deadlocked jury on the issue of legal insanity automatically indicates that the person was legally sane and therefore culpable.

■■■ However, just as a jury's failure to unanimously agree on a defendant's guilt does not constitute an acquittal by that jury, the fact that a jury is unable to decide unanimously that a person is legally insane does not constitute a finding that the individual is sane. The jury's note evidences that it could not unanimously determine whether Appellee knew what she was doing or, if she did, knew that it was wrong. This is precisely the definition of legal insanity. While the Commonwealth proved beyond a reasonable doubt that Appellee committed the act and the jury unanimously agreed she was mentally ill, the jury did not unanimously find that she was legally sane and intended the consequences of her act, a necessary requirement for a guilty but mentally ill verdict. *See* 18 Pa.C.S. § 314(a).

In sum, only after a jury **unanimously** decides that the defendant has failed to prove by a preponderance of the evidence that he or she was legally insane, may the jury determine whether the person is guilty but mentally ill. Since the second jury herein could not unanimously agree as to whether Appellee was legally insane, it could not proceed to decide if she was guilty but mentally ill. A new trial on that issue is therefore necessary to determine the crucial inquiry of Appellee's criminal responsibility. Thus, the Commonwealth's second issue fails.

■■■■■ The third issue asserted by the Commonwealth is that the trial court abused its discretion in excluding evidence that Appellee had been found guilty of the crimes charged in the first trial. The Commonwealth submits that evidence of the guilty verdict from the first trial was directly relevant and would have eliminated confusion on whether the jury needed to determine if Appellee committed the act.

In response, Appellee avers that the Commonwealth's characterization of the first verdict "is misleading and legally inaccurate." Appellee's brief at 19. Appellee opines that the first verdict did not determine guilt or innocence; rather, the jury only decided whether Appellee committed the act of setting the fire. Since the crimes charged involved criminal intent, the first verdict was not a guilty verdict. Additionally, Appellee highlights that the trial court, in the second trial, did allow the admission of certain facts regarding the fire and informed the jury that it did not have to decide whether Appellee started the fire since the prior jury already reached that determination.

Preliminarily, we note that the Commonwealth has failed to cite or discuss applicable legal authority in support of its argument. Hence, we could find the issue waived. Nevertheless, we shall address it and we conclude that the issue is without merit. As stated above, the first jury verdict was not truly a guilty verdict since the ultimate issue of criminal responsibility was not unanimously determined. Furthermore, the trial court repeatedly instructed the second jury that Appellee set the fire. Thus, the jury already knew that Appellee committed the act and there could not have been any confusion as to whether she started the fire. We find no error in the trial court's decision to instruct the jury that Appellee committed the act rather than permit the Commonwealth to introduce evidence of the first trial's verdict. Such evidence would only have served to mislead the jury from its sole function of determining Appellee's criminal responsibility. *See generally* Pa. R.E. 403.[13]

■■■■ The final position leveled on appeal is that the trial court abused its discretion in preparing and submitting to the jury an improper verdict slip. More specifically, the Commonwealth contends that the verdict slip incorrectly required the jury to decide upon Appellee's guilt when the prior jury made that decision in the first trial. In addition, the Commonwealth asserts that the legislature intended that a jury "simultaneously consider the verdict of 'not guilty by reason of insanity' and the verdict of 'guilty but mentally ill.'" Commonwealth's brief at 25. Finally, the Commonwealth posits that the verdict slip limited the jury's findings to not guilty by reason of insanity or guilty but mentally ill and failed to include the choice of guilty.

Appellee replies that these issues are waived because the Commonwealth did not timely object to the structuring or phrasing of the verdict slip. In the alternative, Appellee asserts that pursuant to 18 Pa. C.S. § 314, a jury must unanimously find that the defendant is legally sane before it can consider whether the individual is guilty but mentally ill. Additionally, Appellee notes that the verdict slip permitted the jury to return a verdict that rejected both verdicts of insanity and guilty but mentally ill, which would result in a guilty verdict.

For myriad reasons, the Commonwealth's issue must fail. First, the Commonwealth failed to timely object to either the structure or wording contained within the jury slip. Second, a jury must logically decide whether a defendant was legally insane before considering the question of whether he or she was guilty but mentally ill. *See Rabold, supra* at 344; *duPont, supra* at 980; *Commonwealth v. Bowers,* 400 Pa.Super. 377, 583 A.2d 1165, 1173 (1990); *Trill, supra* at 1127 (Pa.Super.1988); 18 Pa.C.S. § 314(a). As previously explained, this is because legal insanity by definition results in a finding that the defendant lacked criminal responsibility. Simply put, if a defendant is legally insane, then he cannot be guilty. In addition, although the jury slip did not state that the jury could find Appellee guilty, any such error by the court was harmless since the jury never resolved the legal insanity issue. Accordingly, the Commonwealth is not entitled to relief.

13. Pa.R.E. 403 states:
 **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time**
 Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Order affirmed. Case remanded. Jurisdiction relinquished.