J-A01008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RUTH DIRENZO-WHITEHEAD | : | |
| | : | |
| Appellant | : | No. 1179 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 16, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004919-2023

BEFORE:  DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 25, 2025**

Appellant Ruth DiRenzo-Whitehead appeals from the Judgment of Sentence of life imprisonment entered after the Honorable William R. Carpenter of the Montgomery County Court of Common Pleas found her guilty of First-Degree Murder and Possession of an Instrument of a Crime ("PIC")[1] in connection with the strangulation death of her minor son, Matthew Whitehead. She asserts that the Commonwealth failed to rebut her insanity or mental infirmity defense and, therefore, the evidence was insufficient to prove the *mens rea* element of the murder conviction.   After careful review, we affirm.

In the early morning hours of April 11, 2023, Appellant strangled her son with a belt in her bedroom in Horsham Township, Pennsylvania. She then

_____

[1] 18 Pa.C.S. § 2502(a) and 907(a), respectively.

locked the bedroom door and drove to Wildwood Crest, New Jersey, where she abandoned her car on the beach, and walked to the family's beach home.

Upon waking, Appellant's husband, who slept in a separate bedroom, forced his way into the locked bedroom, found their son's body, and called 911. Wildwood Crest police officers discovered Appellant's car abandoned on the beach, and around 7:00 A.M., the Pennsylvania authorities notified them that they suspected that Appellant had strangled her son. Officer Michael McInerney, of the Wildwood Crest Police Department, drove to Appellant's beach home and spotted her standing on the sidewalk in front of the house barefoot and in her pajamas. Appellant told them, "I know what I did." N.T., 2/12/24, at 67, 69. When booked at the Cape May Correctional Facility, Appellant told the intake officer that Matthew "was" her son and that she put a belt around his neck and killed him. *Id*. at 79-80. She also told the correctional officer, "I should have not done what I did." *Id*. at 86.

Following her arrest, Appellant pled not guilty. On November 8, 2023, she filed a Notice of Defense of Insanity or Mental Infirmity and Notice of Expert Evidence of Mental Condition Pursuant to 234 Pa. Code § 568.

On February 12, 2024, the case proceeded to a bench trial at which the sole issue was Appellant's mental state when she killed her son. The Commonwealth presented testimony from Dr. Victoria Sorokin, who had performed the autopsy, Appellant's husband, a friend of Appellant, a real estate agent handling the sale of the Wildwood house, and several law enforcement officers from Horsham Township, Wildwood Crest, and Cape May

Correctional Facility. Appellant's husband testified about the financial struggles that they had experienced in 2023 and Appellant's anger towards him after they agreed to sell the beach home. Each of the law enforcement officers testified regarding, *inter alia*, Appellant's calm demeanor on the morning of April 11, 2023, when they approached her and booked her and her admission that she killed her son because the family was experiencing financial distress. She also denied that she was suicidal or under mental duress when officers brought her to the correctional facility later that day.

In addition, Detective Heather Long testified regarding her interview with Appellant and her review of Appellant's cell phone, which revealed that in the month preceding the murder, Appellant had conducted internet searches related to, among other things, suicide, strangulation generally, strangulation with a belt and rope, how long it takes to suffocate someone with a pillow, how much pressure is needed on the carotid artery to kill someone, whether dropping a hairdryer in a bathtub will kill someone, and why mothers kill their children.

In her defense, Appellant presented testimony from Dr. Kenneth Weiss, a psychiatric expert, who opined that, at the time of the offense, Appellant was suffering from major depression, potentially resulting from menopause, and a stress-induced psychotic episode which made her delusional and prevented her from understanding that what she was doing was wrong.[2] He

_____

[2] N.T., 2/14/24, at 165-181.

stated that she had told him about the family's financial struggles, her anger at her husband for mismanaging money, her sadness at having to sell the beach house as a result, and her assertion that she was suicidal and believed her son would be better off dead than without her as a mother.

In rebuttal, the Commonwealth presented Dr. John O'Brien, who testified regarding his meeting with Appellant and Appellant's husband, his review of Appellant's medical and correctional records, and the investigation reports. Dr. O'Brien also testified that Appellant's performance on the Minnesota Multiphasic Personality Inventory ("MMPI") demonstrated, among other things, that Appellant was not a reliable self-reporter. Dr. O'Brien concluded that Appellant had not suffered from either psychosis or a major depressive disorder that rendered her unable to comprehend that strangling her son was wrong. Tr. Ct. Op., 5/13/24, at 9-17.

On February 15, 2024, the court found Appellant guilty of First-Degree Murder and PIC. On February 16, 2024, the court sentenced her to a term of life imprisonment and a concurrent term of 2½ to 5 years' incarceration on the PIC conviction. Appellant filed a post-sentence motion asserting, among other things, that the verdicts were contrary to the weight of the evidence. The trial court entered an order on March 8, 2024, summarily denying the post-sentence motion.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issue for our review:

> Was there sufficient evidence to prove the *mens rea* of first[-]degree murder and possession of an instrument of a crime beyond a reasonable doubt?

Appellant's Br. at 3.

***

Appellant argues that the evidence was insufficient to establish the necessary *mens rea* for a conviction for first degree murder and PIC. In particular, Appellant claims that since the evidence established that Appellant was "mentally ill" when she strangled her son, she could not have had the necessary *mens rea* for the murder and PIC convictions.

In addressing a sufficiency challenge, our standard of review is *de novo*, and our scope of review is limited to the evidence admitted at trial. ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014). We determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." ***Commonwealth v. May***, 887 A.2d 750, 753 (Pa. 2005). The factfinder, "while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017).

First-degree murder is a criminal homicide committed by an "intentional killing." 18 Pa.C.S. § 2502(a). "To obtain a first-degree murder conviction,

the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific intent to kill." **Commonwealth v. Montalvo,** 986 A.2d 84, 92 (Pa. 2009), *citing* **Commonwealth v. Kennedy,** 959 A.2d 916, 920 (Pa. 2008); 18 Pa.C.S. § 2502(a). "Intentional killing" is defined as "killing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. §2502(d). It is the Commonwealth's burden to prove each element of the offense beyond a reasonable doubt. **Commonwealth v. Mitchell**, 902 A.2d 430, 444-45 (Pa. 2006). The Commonwealth can establish the specific intent to kill through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body. **Commonwealth v. Rega,** 933 A.2d 997, 1009 (Pa. 2007).[3]

With respect to the crime of PIC, a person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally. 18 Pa. C.S. § 907. "Instrument of crime" includes "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have." 18 Pa.C.S. § 907(d)(2). **See**, **e.g.**, **Commonwealth v. Maqliocco**, 883 A.2d 479, 487-

---

[3] **See, e.g.**, **Commonwealth v. Sullivan**, 326 A.3d 426, at *6 (Pa. Super. Ct. 2024), *reargument denied* (Nov. 1, 2024) (non-precedential) (affirming that a belt constituted a "deadly weapon" in an aggravated assault case).

89 (Pa. 2005) (affirming PIC conviction where a bat and a broomstick were used in committing assault).

It is well-settled that "criminal defendants may be presumed sane for purposes of determining their criminal liability." ***Commonwealth v. Fortune***, 302 A.3d 780, 783 (Pa. Super. 2023) (quoting ***Commonwealth v. Rabold***, 951 A.2d 329, 341 (Pa. 2008)). Thus, while the Commonwealth has the burden to prove each element of crime as defined by statute, it is a defendant who has the burden of proving an insanity defense. ***Fortune***, 302 A.3d at 783.

To establish an insanity defense, a defendant must prove "by a preponderance of the evidence that the actor was legally insane at the time of the commission of the offense." 18 Pa.C.S. § 315(a). A person will be found to be "legally insane" if "at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act [s]he was doing, if the actor did know the quality of the act [s]he was doing, that [s]he did not know that what she was doing was wrong." 18 Pa.C.S. § 315(b). ***See also Regina v. M'Naghten***, 8 Eng. Rep. 718, 722 (1843) (same).

However, "[a] person who timely offers a defense of insanity in accordance with the Rules of Criminal Procedure may be found "guilty but mentally ill" at trial if the trier of facts finds, beyond a reasonable doubt, that the person is guilty of an offense, was mentally ill at the time of the

commission of the offense and was not legally insane at the time of the commission of the offense." 18 Pa.C.S. § 314. Our legislature has provided the following definitions:

(1) **"Mentally ill." One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.**

(2) **"Legal insanity."** At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S. § 314(c) (some emphasis added).

In discussing the interplay between the two defenses, our Court has stated:

[T]he legislature has determined that persons classified as **guilty but mentally ill** either lack the capacity to appreciate the wrongfulness of their conduct or are unable to conform their conduct to the requirements of the law. However, the General Assembly determined that this classification of individuals is capable of possessing the requisite *mens rea* for the attachment of criminal responsibility. . . . On the other hand, defendants who have been **adjudged insane** are defined as laboring under a defect of reason so grave as not to have known the nature and quality of the acts they were doing, or if they did know the nature and quality of the acts, they were unable to comprehend that what they were doing was wrong. **In this classification, the legislature found that such individuals were incapable of forming the intent necessary to impose criminal liability.**

[ ... B]efore determining the issue of insanity, the Commonwealth must prove each element of the offense charged. Thus, [ ... ] the Commonwealth must establish criminal intent before the issue of insanity is reached; however, the defense of legal insanity can, on those occasions when one is asserting cognitive incapacity, render

a person incapable of forming criminal intent. Concomitantly, the insanity rule established by **Regina v. M'Naghten**, 8 Eng. Rep. 718 (1843), can override the element of *mens rea* where the defendant proves the moral incapacity aspect of his defense by a preponderance of the evidence.

Phrased another way, legal insanity does not necessarily eliminate *mens rea,* although it may; nor, of course, does the Commonwealth's proof of the *mens rea* element of the offense eliminate the possibility of the [factfinder] concluding that an individual is legally insane and therefore not criminally responsible. **This, however, does not end our analysis of the law relative to the legal insanity defense, since an assertion of that defense automatically gives rise to the alternative verdict of guilty but mentally ill. Indeed, unless a person pleads guilty but mentally ill, the guilty but mentally ill verdict only arises in the context of a legal insanity defense.**

Accordingly, even if the Commonwealth proves each of the elements of the crimes charged beyond a reasonable doubt and the defendant fails to show by a preponderance of the evidence that he is legally insane, the [factfinder] must still consider whether the defendant was mentally ill at the time of the commission of the act.

. . . Our courts have differentiated mental illness from legal insanity by distinguishing between the appreciation of wrongfulness factor under the mentally ill definition and the lack of knowledge of wrongfulness aspects of the legal insanity definition.

**Commonwealth v. Andre***, 17 A.3d 951, 960–962 (Pa. Super. 2011)

(emphasis added; case citations, some quotation marks, and some

parentheticals omitted).

\*\*\*

- 9 -

Our review of the record affirms that the Commonwealth presented sufficient evidence to support each element of each crime. Appellant does not dispute that she strangled her son to death with a belt. She challenges only whether the Commonwealth's evidence proved the *mens rea* element of First-Degree Murder and PIC. We conclude the Commonwealth presented sufficient evidence from which the trial court could find that Appellant had the requisite intent to kill her son.

This evidence included the testimony of Detective Long regarding her interview with Appellant as well as the evidence obtained from Appellant's cell phone showing her web searches on topics related to methods of killing, including strangulation by belt or rope, as well as explanations for why mothers kill their sons and how long it takes for one to die by strangulation. N.T., 2/13/24, at 8-48. In addition, the Commonwealth presented Dr. O'Brien's testimony regarding his interview with Appellant and the testing he performed to reach his conclusion that Appellant "was able to appreciate the nature, and the wrongfulness of her acts." ***Id.***, at 12 (citing N.T. Trial-Vol.2 (Excerpt), at 6-8). ***See also*** N.T., 2/14/24 Vol. 2,[4] at 7-13.

Since the record supports the conclusion that Appellant had the necessary *mens rea* for the murder and possession of an instrument of a crime, the evidence is sufficient to support these convictions.

---

[4] Although the court reporter titled the volume containing Dr. O'Brien's testimony as "Excerpt," it appears to contain his entire testimony. Accordingly, we refer to this portion of the transcript as simply "Vol. 2".

- 10 -

Appellant argues that "[t]his case turns on the narrow issue as to Appellant's criminal insanity, and seemingly the trial [court] below found that Appellant did not even suffer from a mental illness at all, let alone at the time of the commission of the killing[.]" Appellant's Brief at 18. She also contends that Dr. Weiss's testimony showed that there was "reasonable doubt as to Appellant's sanity" that "was not overcome by the rebuttal evidence from [Dr.] O'Brien" *Id*. at 17.

Appellant's argument is premised on the assumption that the trial court was required to accept the conclusion of her expert and had no authority to reject the conclusion of the Commonwealth's expert. In essence, Appellant's sufficiency argument is premised on the proposition that the trial court was required to accept Dr. Weiss' conclusion that Appellant had a psychotic break when she strangled her son.

This argument fails for several reasons. First, there is no legal authority that requires a trial court to accept the conclusions of an expert, especially when there are two experts with conflicting conclusions. Second, Appellant's argument that the factfinder erred in finding Dr. O'Brien's testimony more persuasive than that of Dr. Weiss, is, in essence, challenging the weight of the evidence. As discussed below, Appellant waived her challenge to the weight of the evidence that the trial court placed on Dr. O'Brien's expert conclusion.

- 11 -

\* \* \*

A weight of the evidence claim must be raised with specificity both in a post-sentence motion and a Rule 1925(b) statement in order to preserve it for our review. ***See***, ***e.g.***, ***Commonwealth v. Hitner***, 910 A.2d 721, 733 n. 17 (Pa. Super. 2006) (finding a weight of evidence claim preserved where the appellant "raised his *specific* weight of the evidence claims in his post-sentence motion and court-ordered [Rule] 1925(b) statement") (citations omitted; emphasis added). A statement submitted pursuant to Pa.R.A.P. 1925(b) must "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Rule 1925(b)(4)(ii). ***See Commonwealth v. Juray***, 275 A.3d 1037, 1048 (Pa. Super. 2022)(stating that "to preserve a challenge to either the sufficiency or weight of the evidence on appeal, an appellant's Rule 1925(b) concise statement must state with specificity the elements or verdicts for which the appellant alleges that the evidence was insufficient or against the weight of the evidence."); ***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa. Super. 2011) ("[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal."). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). ***See also*** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In her post-sentence motion, Appellant asserted broadly that "the verdict of guilty on both guilty convictions was against the weight of the evidence in violation of Pa.R.Crim.P 607." Post Sentence Motion, 2/26/24, at ¶ 7. In her Rule 1925(b) statement, Appellant raised a weight claim as follows: "Whether the verdict of guilty of murder of the first degree was against the weight of the evidence adduce [sic] at trial prove the defendant guilty beyond a reasonable doubt." Rule 1925(b) Statement, 4/22/24, at 1.

In its Rule 1925(a) Opinion, the trial court concluded that, "given the lack of any specificity as to why her conviction was against the weight of the evidence, this [c]ourt finds a waiver." Tr. Ct. Op., 5/13/24, at 25-26. Based on our review of the record, we agree that Appellant failed to raise the argument she now presents to this Court in either her post-sentence motion or in her Rule 1925(b) Statement. Pursuant to the above authority, we are constrained to find that her weight argument is waived.

\* \* \*

Having found that the Commonwealth presented sufficient evidence supporting the *mens rea* element of the crimes of First-Degree Murder and PIC, and that Appellant waived her challenge to the weight of the evidence, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

- 13 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>2/25/2025</u>