J-S05005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC KASHKASHIAN | : | |
| | : | |
| Appellant | : | No. 3361 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 24, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0002803-2015,
CP-09-CR-0003277-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC KASHKASHIAN | : | |
| | : | |
| Appellant | : | No. 3362 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 24, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0002803-2015,
CP-09-CR-0003277-2015

BEFORE:  BOWES, J., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 25, 2021**

Eric Kashkashian appeals from the September 24, 2019 judgment of

sentence of six years of probation, which was imposed following his conviction

of two counts of resisting arrest, and one count each of criminal mischief and defiant trespass.[1]  We affirm.

Appellant's convictions arise from his interactions with police officers on two occasions during December 2014 at Appellant's residence, the Red Lion Inn, in Quakertown Borough, Pennsylvania.  Appellant was charged with, *inter alia*, aggravated assault, simple assault, resisting arrest, defiant trespass, and disorderly conduct.  Following an evaluation that found Appellant to be competent, a waiver trial took place on July 31, 2019.

The Commonwealth introduced the testimony of Officer Nicholas Filoon, a ten-year veteran of the Quakertown Borough Police Department.  At approximately 9:34 p.m. on December 24, 2014, Officer Filoon responded to a call concerning a disturbance in apartment number 21 at the Red Lion Inn. The Inn operated under a hotel license, with people checking in and out "just like a Holiday Inn."  N.T. Trial, 7/31/19, at 54.  Officer Filoon knocked on the door of the apartment, but there was no response.  As he stood at the door, he could hear someone hitting things, throwing things around, and talking to himself inside of the apartment.  Officer Filoon also heard Appellant threatening harm to himself and Officer Filoon.  Eventually, Appellant opened the door wearing nothing but his socks.  N.T. Trial, 7/31/19, at 22.  Then, he

_____

[1] Appellant filed timely *pro se* notices of appeal purportedly appealing from an October 14, 2019 order.  The appeals properly lie from the judgment of sentence entered September 24, 2019, and we have amended the caption accordingly.

- 2 -

laid down on his back in a pile of rubbish, filth, clothes, and trash inside of the apartment. *Id*. When Officer Filoon tried to communicate with Appellant, he began to swing from the open door. Officer Filoon called for assistance, but before back-up arrived, Appellant ripped off part of the wooden door trim and began swinging it through the air. Then, he threw a broken laundry basket at Officer Filoon, prompting the officer to place Appellant under arrest.

Officer Filoon directed Appellant to place his hands behind his back, but Appellant refused. By that time, additional officers had arrived on the scene and the narrow hallway outside the apartment was congested. In order to detain Appellant and prevent him from pushing the responding officers over the railing at the top of the floor's stairwell, Officer Filoon deployed a taser cartridge. Once tased, Appellant "seized up" and fell back into his apartment. *Id*. at 28. Even after being tased, Appellant pulled his arms toward his mid-section to prevent the officers from placing handcuffs on him. Officer Filoon testified that it took substantial force to overcome Appellant's resistance. *Id*. at 29. Once he had been pacified, the officers dressed Appellant in his pants and carried him down the Red Lion Inn's exterior fire escape to the parking lot.

Paramedics examined Appellant and determined that he had not suffered any significant injury from the taser, and Appellant was transported to St. Luke's Quakertown Hospital for a mental examination. *Id*. at 30, 41.

Officer Filoon signed the paperwork for a § 302 involuntary commitment under the Mental Health Procedures Act, 50 P.S. § 302. *Id*. at 43.

Appellant returned to his apartment on December 26, 2014. The owner of the Red Lion Inn, Ms. Janice K. Hench, informed Appellant that he had to vacate the premises because he was making noise that disturbed the other guests. *Id*. at 57. Appellant did not want to leave. Ms. Hench called Appellant's brother and the police. When Officer Robert James Lee of the Quakertown Police Department responded to the Inn that day at approximately 2:00 p.m., Appellant's brother was already there. Together, the two men communicated to Appellant that he needed to leave the property, and Appellant told Officer Lee that he would do so. *Id*. at 63. Officer Lee left the Inn.

Officer Lee was recalled to the Inn at 6:08 p.m. that evening. At that time, Appellant was still on the premises, and Officer Lee described him as incoherent.[2] *Id*. at 64. Officer Lee advised Appellant that he was under arrest, and when he was met with resistance, he decided to wait for help from another township police department. *Id*. at 65. When additional officers arrived, Appellant picked up a sharp object that appeared to be a piece of broken glass. *Id*. Officer Lee testified that the assembled officers were concerned for their safety, prompting them to employ a taser to control

---

[2] Officer Lee testified that he believed Appellant's brother was still on the premises at the time, but not inside the room. N.T. Trial, 7/31/19, at 64.

Appellant. Officer Lee testified that it took a substantial amount of force exerted over five to eight minutes for the officers to subdue Appellant and place him under arrest. *Id*. at 66. Thereafter, they carried Appellant down the Inn's narrow metal fire escape stairs, placed him in the police car, and took him to the station.

Ms. Hench testified that she inspected the unit after Appellant was arrested the second time. Appellant had pulled down the entire dropped ceiling, smashed the drywall, windows, and furniture, and ripped the mattress and carpet. *Id*. at 50-51.

At the close of the evidence, a discussion took place among defense counsel, the Commonwealth's attorney, and the trial court about Appellant's history of mental illness. Mental evaluations were incorporated by reference. *Id*. at 84. The Commonwealth represented that, based on confidential psychological evaluations conducted on August 16, 2016, January 13, 2016, and March 19, 2018, Appellant met the criteria for guilty but mentally ill. Defense counsel concurred in that assessment and introduced a report diagnosing Appellant with paranoid schizophrenia. With the consent of the defense and the Commonwealth, the trial court found Appellant guilty but mentally ill of resisting arrest, criminal mischief, and defiant trespass. *Id*. at 86. Sentencing was deferred to allow time for an updated mental evaluation.

Appellant was sentenced as aforesaid on September 24, 2019. At that time, he had already served four years in Norristown State while awaiting to

be declared competent to stand trial. Despite the fact that Appellant was represented by counsel, he filed *pro se* notices of appeal.[3] Thereafter, Appellant requested new counsel and, on March 20, 2020, present appellate counsel was appointed. Counsel complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the trial court issued its Rule 1925(a) opinion.

This Court issued a rule to show cause to Appellant at each docket number as why his appeal should not be quashed under ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018), because his notices of appeal contained multiple docket numbers. After Appellant filed a response at each docket, the rule was discharged and deferred to the merits panel for consideration. Thereafter, the appeals were consolidated by this Court. ***See*** Order, 3/3/20. Appellant subsequently received permission from this Court to file a supplemental brief addressing the ***Walker*** issue.

In addition to the ***Walker*** question, Appellant presents two issues for our review:

    I.    Was the evidence presented at trial insufficient to sustain a conviction for resisting arrest, in that:

        A. The evidence did not prove that Appellant had the intent to prevent the police from effecting a lawful arrest, or from discharging their duties; and,

---

[3] The certified record at each docket number contains an identical handwritten notice of appeal, except that the time stamp on one notice is original and the time stamp on the other indicates that it is a copy.

- 6 -

     B.  The evidence did not prove that Appellant either created a substantial risk of bodily injury to the police, or that Appellant's actions required substantial force on the part of the police to overcome any resistance on the part of Appellant.

    II.  Was the evidence presented at trial insufficient to sustain a conviction for defiant trespass in that:

     A.  The evidence did not prove that Appellant knew he was not licensed or privileged to remain at the property; and

     B.  The evidence did not prove that Appellant had the ability to vacate the property, and in fact proved that Appellant could not leave the premises as the property owner possessed and retained Appellant's keys preventing him from leaving.

Appellant's brief at v (unnecessary capitalization omitted).

Preliminarily, we address whether this appeal must be quashed for lack of jurisdiction based on **Walker**, which provides that an appeal must be quashed if an appellant fails to file separate notices of appeal at each docket number where the issue appealed is implicated. Each certified record contains a notice of appeal. The fact that each notice bears two docket numbers, the concern that prompted the issuance of the rule, was subsequently held not to run afoul of **Walker** in **Commonwealth v. Johnson**, 236 A.3d 1141 (Pa.Super. 2020) (*en banc*) (overruling **Commonwealth v. Creese**, 216 A.3d 1142, 1144 (Pa.Super. 2019), construing **Walker** as precluding notices of appeal listing multiple docket numbers, even if those notices were included in the records of each case).

However, it appears that the time stamp on the notice filed at docket No. 3277-2015 is a photocopy of the original time stamp located on the notice

filed at No. 2803-2015, suggesting that Appellant filed only one notice of appeal, and that the Clerk of Courts photocopied that notice and placed it in the second docket. Nonetheless, we find no **Walker** violation.

As Appellant points out in his supplemental brief, he was not advised of his appeal rights at sentencing as required. He directs our attention to **Commonwealth v. Stansbury**, 219 A.3d 157 (Pa.Super. 2019), where this Court held that a misstatement as to the manner in which the appellant could effectuate an appeal amounted to a breakdown in court operations that permitted us to overlook the defective notice of appeal for purposes of **Walker**. In arriving at that holding, we cited **Commonwealth v. Patterson**, 940 A.2d 493, 498 (Pa.Super. 2007), compiling cases finding a court breakdown in instances where the trial court, at the time of sentencing, either failed to advise the appellant of his post-sentence and appellate rights or misadvised him. In **Commonwealth v. Larkin**, 235 A.3d 350 (Pa.Super. 2020) (*en banc*), this Court agreed with the panel in **Stansbury** and reaffirmed its holding that we may overlook the requirements of **Walker** where a breakdown occurs in the court system, and a defendant is misinformed or misled regarding his appellate rights. Even more recently, the Supreme Court favorably cited **Stansbury** in refusing to quash an appeal based on **Walker** in a civil case where there was a breakdown in the court system. **See Always Busy Consulting, LLC v. Babford & Co.**, ___A.3d___, 2021 Pa. LEXIS 1225 (Pa. 2021). That rationale is equally applicable herein,

where the court entirely failed to advise Appellant of his appellate rights at sentencing.[4] Therefore, we decline to quash this appeal and will proceed to review the merits of Appellant's claim.

We turn now to the issues presented by Appellant, both of which implicate the sufficiency of the evidence, which is a question of law. *Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014). Hence, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017). Moreover,

> In reviewing a challenge to the sufficiency of the evidence, an appellate court is to consider the evidence admitted at trial and all reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner. An appellate court may not substitute its judgment for that of the fact-finder; the critical inquiry is not whether the court believes the evidence established guilt beyond a reasonable doubt, but whether the evidence believed by the fact-finder was sufficient to support the verdict. The proper question is not whether the defendant's contentions are supported by the record, but whether the verdict is so supported.

*Commonwealth v. Sinnott*, 30 A.3d 1105, 1110 (Pa. 2011) (internal citations omitted).

Appellant contends first that the evidence does not support his convictions for resisting arrest on December 24 and 26, 2014. Specifically,

---

[4] The Commonwealth concedes that the cases relied upon by Appellant established that there was a breakdown in the court system, and agreed that quashal based upon *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), was therefore not warranted. We appreciate the Commonwealth's candor.

- 9 -

he claims that there was insufficient evidence that he had the requisite intent to prevent the police from effecting lawful arrests. *See* Appellant's brief at 12. In support of his claim, Appellant points to the following facts with regard to the events of December 24, 2014. Officer Filoon is 6 feet, 7 inches tall and weighs 260 pounds. *See* N.T. Trial, 7/31/19, at 19. Appellant argues that Officer Filoon arrived at the Red Lion Inn, observed Appellant in a mental health crisis, decided to take him into custody, and tasered him to accomplish that aim. *See* Appellant's brief at 12. Appellant maintains that a fair reading of the record reveals that although he was delusional, he had no intent to prevent police from arresting him.

Furthermore, Appellant argues that the evidence did not prove that he either created a risk of bodily injury to the police or that substantial force was required to overcome his resistance. *Id*. at 13. According to Appellant, he merely tensed up, which he contends is no different than the "minor scuffling" that did not constitute resistance in ***Commonwealth v. Rainey***, 426 A.2d 1148 (Pa.Super. 1981). *Id*. at 13. Moreover, he points to the fact that it only took five to ten seconds to cuff and disable Appellant and that any force necessary to subdue him was minor. *Id*.

With regard to the resisting arrest conviction arising out of the events of December 26, 2014, Appellant virtually concedes that substantial force was required to overcome his five to eight minutes of lack of cooperation with police. However, he claims that there was no proof that he had the requisite

intent to prevent the police from discharging their duty as he was not in his right mind. Appellant's brief at 12. According to the trial testimony, Appellant argues that he was incoherent and in the throes of a mental health crisis. *Id*.

The offense of resisting arrest is defined in 18 Pa.C.S. § 5104, as follows:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104.

We note preliminarily that a finding of "guilty but mentally ill" is the same as that of a traditional guilty verdict.[5] *Commonwealth v. Sohmer*, 546 A.2d 601, 607 (Pa. 1988). In creating the classification of guilty but mentally ill, the General Assembly determined that such individuals are capable of possessing the requisite *mens rea* for the attachment of criminal responsibility. In contrast, defendants who have been adjudicated insane are defined "as laboring under a defect of reason so grave as not to have known the nature and quality of the acts they were doing, or if they did know the nature and quality of the acts, they were unable to comprehend that what

---

[5] In *Commonwealth v. Sohmer*, 546 A.2d 601, 606-607 (Pa. 1988), our High Court explained that "the only effect of a verdict of guilty but mentally ill is to trigger an inquiry at the time of sentencing to determine the defendant's mental status at the time of the sentencing phase." The finding has no impact upon the adjudicative process and is not an element of the substantive crime.

they were doing was wrong." ***Commonwealth v. Andre***, 17 A.3d 951, 960-961 (Pa.Super. 2011). Thus, a determination that a defendant is guilty but mentally ill does not negate the criminal intent of the defendant, but instead "expressly recognizes that all elements of the crime have been met." ***Commonwealth v. Santiago***, 855 A.2d 682, 701 (Pa. 2004). If the fact finder is convinced that the prosecution has proven that the defendant committed the crime but was mentally ill, it must find that person guilty but mentally ill. ***Andre***, ***supra*** at 962.

With regard to the intent element, we are mindful of the following. "A person acts intentionally with respect to a material aspect of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). We recognize that since intent is a subjective frame of mind, "it is of necessity difficult of direct proof." ***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006) (citations omitted). Thus, intent may be proven by direct or circumstantial evidence. ***See Commonwealth v. Jackson***, 955 A.2d 441, 446 (Pa.Super. 2008) (reaffirming that intent to cause serious bodily injury may be proven by both direct and circumstantial evidence).

We find sufficient evidence that Appellant intended to prevent the police officers from effecting lawful arrests on both December 24 and 26, 2014. He defied commands to place his hands behind his back, prompting them to use the taser. Even then, Appellant placed his arms under his body in such a way

as to prevent the officers from handcuffing him. During the December 26, 2014 altercation, Appellant wielded a broken piece of glass to ward off the officers. Thus, it was reasonable for the fact finder to infer the requisite intent for resisting arrest from this conduct.

In addition, we find no merit in Appellant's contention that the Commonwealth did not prove that he either created a substantial risk of bodily injury to the police, or that Appellant's actions required substantial force on the part of the police to overcome his resistance. Resisting arrest "does not require the aggressive use of force such as a striking or kicking of the officer." *Commonwealth v. McDonald*, 17 A.3d 1282 (Pa.Super. 2011) (quoting *Commonwealth v. Miller*, 475 A.2d 145, 146 (Pa.Super. 1984)). In *McDonald*, we sustained the conviction for resisting arrest where the defendant refused to comply with police when they attempted to handcuff him, and after being threatened with the taser, persisted in the refusal to comply.

Officer Filoon testified that on December 24, 2014, Appellant refused to turn around and be handcuffed, and stated that it took substantial force to overcome his resistance. *See* N.T. Trial, 7/31/19, at 29. Even after Appellant was tased, he pulled his arms toward his midsection to prevent the officers from placing handcuffs on him.

With respect to the incident on December 26, 2014, Officer Lee testified that Appellant had a sharp object, perhaps glass, in his hand, and the officers

were concerned for their safety. *Id*. at 65. After Appellant refused to peacefully comply with the officer's direction to place his hands behind his back, another officer tried to deploy the taser, but Appellant resisted. Officer Lee intervened and used the taser and Appellant landed on the bed. Thereafter, Appellant put his hands under his body and refused to allow the officers to handcuff him. *Id*. at 67. It took four officers five to eight minutes, three sets of handcuffs, and what Officer Lee testified was a substantial amount of force to overcome Appellant's resistance. *Id*. at 66-67. Hence, we find no merit in Appellant's challenge to the sufficiency of the evidence supporting his convictions for resisting arrest, and no relief is due.

Appellant's second issue is a challenge to the legal sufficiency of his defiant trespass conviction. A person commits the offense of defiant trespass "if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . actual communication to the actor[.]" 18 Pa.C.S. § 3503(b)(1)(i). Hence, in order to establish a violation, the Commonwealth must prove that the defendant: "1) entered or remained upon property without a right to do so; 2) while knowing that he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass." ***Commonwealth v. Namack***, 663 A.2d 191, 194 (Pa.Super. 1995). This crime, like resisting arrest, has an element of intent or *mens rea*. ***Commonwealth v. Wanner***, 158 A.3d 714, 718 (Pa.Super. 2017).

- 14 -

First, Appellant claims that no one communicated to him that he was not permitted to remain on the property. The certified record refutes his contention. Ms. Hench, the owner of the Inn, testified that she advised Appellant that he had to leave because of his destruction of the premises. Officer Lee and Appellant's brother also communicated to him on the afternoon of December 26, 2014, that he needed to leave the premises. N.T., 7/31/19, at 63. Appellant agreed to vacate the premises and told them he would pack and leave that very day. Thus, the evidence established that it was communicated to Appellant that he could not remain on the property.

Appellant argues that he could not leave, however, because Ms. Hench had his keys for purposes of moving his car out of the way of the snowplow. Ms. Hench explained that Appellant gave her his driver's license and keys when he was taken away "the second time," as she had no idea how long he would be gone and she needed to be able to move his car in the parking lot so that snowplowing could be performed in his absence. *Id*. at 59. Since the evidence established that Appellant's keys were given to Ms. Hench when he was arrested for failing to vacate the premises on December 26, we find no factual support for his contention that he could not leave prior to turning over the keys. For these reasons, we find the evidence legally sufficient to support Appellant's conviction of defiant trespass.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/25/2021