J-S42005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COLIN FRANK PETROZIELLO | : | |
| | : | |
| Appellant | : | No. 995 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 17, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0004250-2021

BEFORE:  BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 26, 2024**

Colin Frank Petroziello appeals from the judgment of sentence of fifteen to thirty years of imprisonment that was imposed after he pled *nolo contendere* to three counts of attempted murder, six counts of aggravated assault, and one count each of assault of a law enforcement officer, persons not to possess a firearm, possession of instrument of crime, and recklessly endangering another person.  After careful review, we affirm in part and vacate in part.

On August 18, 2021 at approximately 11:00 A.M., Appellant fired a shotgun through the front door of his residence shortly after Yardley Borough Police Chief Joseph Kelly and Bucks County Adult Probation Officer Christina Viviano knocked on the door and identified themselves as police and probation officers, respectively.  Several shotgun pellets pierced the front door and

struck Police Chief Kelly in the ear and hand. The Commonwealth's factual basis for the plea continued as follows:

> Immediately following the gunshot being fired, [Appellant] barricaded himself in the unit. Police learned from [Appellant's] father, Guy Petroziello, who was outside the unit in the parking lot with police officers[,] that his wife, Ann, was inside the unit with [Appellant]. Ann was on her cell phone relaying that [Appellant] barricaded the front door and was armed with a shotgun. By barricading the front door, [Appellant] was preventing his mother from leaving and preventing the police from entering.
>
> At approximately 12:28 p.m., Ann was still inside the residence. At this point when the [South Central Emergency Response Team ("SERT")] and all [nineteen area] police agencies were staged outside, Ann [relayed] that [Appellant] passed out on the floor and that she would now be able to toss the shotgun out of the window rather than wake [Appellant] by unbarricading the front door.
>
> She was able to toss the shotgun from the window and then exit through the window after the SERT team pulled up their armored vehicle . . . so that she could exit out the second floor window to evacuate her safely. The discarded shotgun was identified as a Mossberg 12- gauge shotgun with one live round in the chamber.

N.T. Plea Hearing, 9/29/22, at 25-26. After SERT apprehended Appellant, they discovered a loaded .45 caliber handgun, which Appellant was prohibited from possessing as a result of prior involuntary mental health commitments on April 29, 2012, and October 11, 2020. *Id*. at 26-27.

As to the injuries sustained by Police Chief Kelly, the Commonwealth stated,

> Chief Joseph Kelly was admitted to Saint Mary's Medical Center where he underwent surgery on his left hand. He sustained

- 2 -

injuries to his left hand, specifically digits one, two, three, and four, sustaining a fracture to the fourth digit. During surgery, [fifteen] pieces of buckshot rounds were removed from his left hand. He also sustained cuts and abrasions to his left ear as a result of being struck by projectile fragments. Despite surgery and months of physical therapy, Chief Kelly still does not have full range of motion of his left hand.

*Id*. at 28.

Appellant's mental health at the time of the shooting was the focus of discussion during the plea colloquy. The Commonwealth advised the court "This is an open guilty plea with a finding that [Appellant] meets the standard for guilty but mentally ill"[1] based upon the findings provided by Appellant's mental health evaluator, John O'Brien, M.D., J.D., that Appellant suffered a mental illness as a result of intoxication when the offense occurred, *i.e.* acute

---

[1] As Appellant's counsel later highlighted, Appellant, in fact, pled *nolo contendere* but mentally ill, as opposed to guilty but mentally ill. The legal effect of a plea of *nolo contendere* is the same as a guilty plea. **Commonwealth v. Prieto**, 206 A.3d 529, 533 (Pa.Super. 2019). However, unlike the plea of guilty but mentally ill, which is set forth in 18 Pa.C.S. § 314(b), *nolo contendere* but mentally ill is not specifically recognized by statute. While neither party raises this aspect of the case, we note that this Court previously recognized this simultaneous adjudication of criminal responsibility and acknowledgement of a mental illness at time of the offense. **See e.g. Commonwealth v. V.G.**, 9 A.3d 222, 227 (Pa.Super. 2010). (explaining, in affirming the order denying petition for expungement, that by pleading *nolo contendere* but mentally ill, the appellant "admitted that he could not contest that he committed the actions . . .[and] . . . agreed that he could be treated as guilty of these crimes.").

paranoia induced by drug use. [2] *Id*. at 2-3; Dr. O'Brien Evaluation and Report, 7/29/22, at 9.

After outlining the factual basis for the plea as indicated hereinabove, the Commonwealth proffered Dr. O'Brien's expert conclusion on Appellant's mental health at the time of the shooting: "It is my opinion that because of his psychiatric symptoms at the time of the offense he lacked substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirement of the law." *Id*. at 33. While stating that he had no objection to incorporating the report into the record, Appellant's counsel continued, "my only argument would be, [Appellant] could not form the specific intent to do these things." *Id*. at 23.

In admitting Dr. O'Brien's report into the record as grounds to support the "mentally ill" component of the plea, the trial court explained,

> I think it's important to note [that Dr. O'Brien's] opinion conforms almost word for word with the [Pennsylvania Crime Code's definition of "mentally ill" which says, "one who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law."

*Id*. at 33-34. *See also*, 18 Pa.C.S. § 314(c)(1) (providing the definition of "mentally ill" for the purpose of pleading guilty but mentally ill).

---

[2] Dr. O'Brien confirmed that "all of the aforementioned opinions [were] rendered to a reasonable degree of medical certainty." Dr. O'Brien Evaluation and Report, 7/29/22, at 9.

- 4 -

The trial court performed a thorough plea colloquy and, finding that the report met the legal standard for a finding of guilty but mentally ill, it accepted the plea, sealed Dr. O'Brien's report, and deferred sentencing for, *inter alia*, the preparation of a presentence investigation ("PSI") report. *Id*. at 34.

Following a sentencing hearing on February 6, 2023, the court imposed two concurrent terms of fifteen to thirty years of incarceration for the attempted murder convictions relating to Police Chief Kelly and Parole Officer Viviano, followed by fifteen years of probation for the firearms offense.[3] The trial court recommended that Appellant serve the sentence in the mental health unit, and imposed restitution in the amount of $43,782.18.

Appellant filed a timely post-sentence motion that, *inter alia*, requested credit for time served pursuant to 42 Pa.C.S. § 9760. He challenged the legality of the fifteen-year term of probation for the misdemeanor firearms offense, and both the validity of, and sentences imposed on, the two pleas of *nolo contendere* to attempted murder. **See** Motion for Reconsideration and Modification of Sentence, 2/15/23 at 3-9. As to the validity of the plea, Appellant argued that based on his mental state at the time of the shooting, he "could not form the specific intent to kill which is required to sustain a

_____

[3] Appellant actually pled *nolo contendere* to two counts of attempted murder involving Police Chief Kelly. The offense listed at count one of the information concerned the attempted murder of Chief Kelly as a law enforcement officer and count three related to the attempted murder of Chief Kelly in his unofficial capacity. Count three merged with count one for the purpose of sentencing.

charge of attempted murder." *Id*. at 6 (footnote omitted). Critically, however, Appellant neither sought to withdraw his *nolo contendere* plea to attempted murder nor explicitly asserted trial court error in accepting the plea. Instead, he simply argued that notwithstanding the *nolo* plea, "Appellant should not be adjudicated guilty . . . on either of the criminal attempted homicide charges[.]". *Id*. at 5. After oral argument, the trial court awarded credit for times served and reduced the fifteen-year probationary tail to four years. However, it denied the motion relative to the challenge to the *nolo* pleas and the sentences imposed on the attempted murder convictions.

This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement that honed his challenge to the *nolo contendere* pleas to reflect the assertion of trial court error that he raises in this appeal. The trial court addressed the revamped contention in the Rule 1925(a) opinion.

Appellant presents the following issues for our review:

I.  Did the trial court err in accepting a *nolo contendere* plea as to the charges of attempted homicide under 18 [Pa.C.S.] § 901(A)[?] The evidence that was presented at the time of [Appellant's] *nolo contendere* plea demonstrated that [Appellant], "because of his psychiatric symptoms at the time of the offense he lacked substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of the law."

II.  Did the trial court err in imposing a sentence upon [Appellant] with no consideration or reference to the sentencing guidelines in this case, thus making the imposed sentence illegal and when the trial court did not make or file any contemporaneous statement regarding deviation from the guidelines in this case?

III.  Did the trial court err in imposing a lengthy and unwarranted sentence upon [Appellant] which failed to consider [Appellant's]

severe mental health condition at the time of the incident in August of 2021?

Appellant's brief at 7 (cleaned up; citation to the record omitted).

At the outset we examine whether Appellant's failure to move to withdraw the plea is fatal to his request for relief. Typically, to preserve a challenge to the voluntariness of a plea, a defendant "must either object during the plea colloquy or file a motion to withdraw the plea[.]" ***Commonwealth v. Lincoln***, 72 A.3d 606, 609-610 (Pa.Super. 2013). "Failure to employ either measure results in waiver." ***Id***. at 610.

Instantly, Appellant filed a post-sentence motion that challenged the validity of his *nolo contendere* plea based on the Commonwealth's recitation of facts presented in support of the two counts of attempted murder. While he never specifically requested to withdraw the plea or expressly asserted trial court error in accepting the plea, the crux of his claim remained the same: he could not be adjudicated guilty of murder based on the facts alleged. The Court denied the requested relief and subsequently explained its rationale in the ensuing Rule 1925(a) opinion. Mindful that (1) the purpose of Rule 720 is to "promote the fair and prompt disposition of all issues relating to guilty pleas . . . by consolidating all possible motions to be submitted for trial court review;" (2) Appellant's post-sentence motion challenged the validity of the plea; and (3) the trial court confronted the root of Appellant's claim in denying relief, Appellant's failure to expressly request to withdraw the plea is not fatal to the issue he presents on appeal. ***See*** Rule 720(B)(1)(a)(i) (explaining that

- 7 -

defendants may bring "a motion challenging the validity of a plea of guilty or *nolo contendere*, **or** the denial of a motion to withdraw a plea of guilty or *nolo contendere*") (emphasis added).  Hence, we address the merits of Appellant's contention that the trial court erred in accepting the no-contest plea to attempted murder because the Commonwealth's recitation of facts did not establish a specific intent to kill.

Our review is guided by the following principles that we recently reiterated as follows:

> Our law is clear that, to be valid, a [*nolo contendre*] plea must be knowingly, voluntarily, and intelligently entered.  There is no absolute right to withdraw a [*nolo contendre*] plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court.  To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to manifest injustice. A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently.  A defendant's disappointment in the sentence imposed does not constitute manifest injustice.

*Commonwealth v. Felix*, 303 A.3d 816, 820 (Pa.Super. 2023) (cleaned up) (quoting *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa.Super. 2008)).

Appellant's challenge to the voluntariness of his plea of *nolo contendere* implicates Dr. O'Brien's finding that, "because of his psychiatric symptoms at the time of the offense[, Appellant] lacked substantial capacity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirement of the law."  N.T. Plea Hearing, 9/29/22, at 33 (quoting Dr. O'Brien Evaluation

and Report, 7/29/22, at 9). Consistent with the argument that Appellant presented in qualifying his assent to the report's inclusion in the record, Appellant contends that, due to his psychiatric problems when the shooting occurred, he could not form the specific intent to commit the crime of attempted murder. Appellant's brief at 26-30. For the following reasons, we disagree.

Appellant's *nolo contendere* pleas based upon Dr. O'Brien's finding of an associated mental illness had the same effect as a plea of guilty but mentally ill pursuant to 18 Pa.C.S. § 314(b). That statute provides as follows in relevant part:

> **(b) Plea of guilty but mentally ill.**--A person who waives his right to trial may plead guilty but mentally ill. No plea of guilty but mentally ill may be accepted by the trial judge until he has examined all reports prepared pursuant to the Rules of Criminal Procedure, has held a hearing on the sole issue of the defendant's mental illness at which either party may present evidence and is satisfied that the defendant was mentally ill at the time of the offense to which the plea is entered. If the trial judge refuses to accept a plea of guilty but mentally ill, the defendant shall be permitted to withdraw his plea. A defendant whose plea is not accepted by the court shall be entitled to a jury trial, except that if a defendant subsequently waives his right to a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.
>
> **(c) Definitions.**--For the purposes of this section and 42 Pa.C.S. § 9727 (relating to disposition of persons found guilty but mentally ill):
>
> > (1) **"Mentally ill."** One who as a result of mental disease or defect, lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

(2) **"Legal insanity."** At the time of the commission of the act, the defendant was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if he did know it, that he did not know he was doing what was wrong.

18 Pa.C.S. § 314(b)-(c).

The definitions of "mentally ill" and "legal insanity" are not legally coextensive. Specifically, "[o]ur courts have differentiated mental illness from legal insanity by distinguishing between the appreciation of wrongfulness factor under the mentally ill definition and the lack of knowledge of wrongfulness aspects of the legal insanity definition." *Commonwealth v. Andre*, 17 A.3d 951, 961-62 (Pa.Super. 2011). In creating these two distinct classifications, the General Assembly determined that individuals who are mentally ill are capable of possessing the requisite *mens rea* for the attachment of criminal responsibility, while those who are legally insane are not. Phrased simply, individuals who are mentally ill are sick but remain criminally responsible for their actions. *See Commonwealth v. Trill*, 543 A.2d 1106, 1123 (Pa.Super. 1988). In contrast, those adjudged to be legally insane are "laboring under a defect of reason so grave as not to have known the nature and quality of the acts" such that they were "incapable of forming the intent necessary to impose criminal liability." *Id*.

Thus, contrary to Appellant's protestations, a determination that a defendant has pled *nolo contendre* but mentally ill does not negate the criminal intent of the defendant, but instead "expressly recognizes that all

elements of the crime have been met." ***Commonwealth v. Santiago***, 855 A.2d 682, 701 (Pa. 2004). Significantly, while Dr. O'Brien determined that Appellant lacked substantial capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law, he clearly did not opine that Appellant was legally insane, *i.e.*, unable to have formed the requisite intent to commit murder.[4] Although legal insanity is a defense to criminal liability, in ***Commonwealth v. Sohmer***, 546 A.2d 601, 606-607 (Pa. 1988), our High Court explained that "the only effect of a verdict of guilty but mentally ill is to trigger an inquiry at the time of sentencing to determine the defendant's mental status at the time of the sentencing phase." The finding has no impact upon the adjudicative process and is not an element of the substantive crime. ***Id***. at 607.

Moreover, by entering the *nolo contendere* plea, Appellant acknowledged that the allegations, if proven, meet the elements of the charged offenses. If Appellant believed that the Commonwealth could not have established the elements of attempted murder beyond a reasonable

---

[4] Even if Dr. O'Brien had concluded that Appellant could not have formed the requisite intent to commit murder at the time of the shooting, it is clear from the certified record that Appellant's acute psychiatric problem resulted from voluntary intoxication, which is not a basis to preclude criminal liability. ***See e.g., Commonwealth v. Bardo***, 105 A.3d 678, 716 (Pa. 2014) ("diminished capacity grounded in voluntary intoxication . . . does not exculpate the defendant from criminal liability"); Dr. O'Brien Evaluation and Report, 7/29/22, at 9 ("His . . . acute paranoia is most consistent with paranoia induced by use of drugs.").

doubt, he should not have pled no contest to that offense.  He did, however, and he cannot now challenge the import of the facts that the Commonwealth presented as the factual basis of the plea.  **See Lincoln**, 72 A.3d at 609 (stating, by pleading guilty a defendant "waives his right to challenge ... all non[-]jurisdictional defects except the legality of the sentence and the validity of the plea.").  In this vein, Appellant contends for the first time in his brief that the Commonwealth failed to establish the factual basis for the plea because the trial court never asked Appellant "if **he** agreed to the fact pattern as . . . presented to the trial court."  Appellant's brief at 25 (emphasis in original).  To the extent that Appellant is now asserting that defense counsel's acceptance of the factual basis for the plea without question or addition was insufficient, that issue is also waived insofar as Appellant failed to raise it before the trial court, or include it in the Rule 1925(b) statement, and the trial court was unable to address it.  **See** Pa.R.A.P.302(a) (issues not raised before the trial court are waived and cannot be raised for the first time on appeal); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").  Thus, for all the foregoing reasons, we reject Appellant's assertion that the trial court erred in accepting the *nolo contendere* pleas to the charges of attempted homicide due to his mental illness at the time of the offense.

Since Appellant combined his discussion of the remaining issues implicating the discretionary aspects of his sentence, we also address them collectively.[5]

The following principles govern our review:

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Lucky**, 229 A.3d 657, 663-64 (Pa.Super. 2020) (internal quotation marks omitted). "It is well-established that where the issues raised assail the trial court's exercise of discretion in fashioning the defendant's sentence, the trial court must be given the opportunity to reconsider the imposition of the sentence either through the defendant raising the issue at sentencing or in a post-sentence motion." **Commonwealth v. Cramer**, 195 A.3d 594, 610 (Pa.Super. 2018) (cleaned up)

**Commonwealth v. Bowens**, 265 A.3d 730, 762–63 (Pa.Super. 2021) (*en banc*).

_____

[5] By pleading *nolo contedere* but mentally ill, Appellant was subject to the same penalties as if he had plead guilty. **See** 42 Pa.C.S. § 9727(a) ("A defendant . . . whose plea of [*nolo contendere* but mentally ill] is accepted . . . may have any sentence imposed on him which may lawfully be imposed on any defendant convicted of the same offense."). However, the statute envisions that the defendant will receive "treatment as is psychiatrically or psychologically indicated" for his particular illness. 42 Pa.C.S. § 9727(b)(1).

Instantly, Appellant satisfied the first three requirements of the four-part test. He filed a timely notice of appeal, a post-sentence motion seeking reconsideration of his sentence, and a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f).[6] The statement of reasons can be condensed to two basic complaints: (1) the trial court failed to reference its rationale for deviating from the sentencing guidelines; and (2) the imposition of fifteen to thirty-years imprisonment for attempted murder was excessive, disregarded Appellant's *nolo contendere* plea and history of psychiatric problems, and ignored the positive aspects of the PSI Report. Appellant's brief at 19.

---

[6] The Commonwealth argues that the sentencing issues are waived because Appellant neglected to file a fresh post-sentence motion after the sentence was reimposed. Commonwealth's brief at 17. It is mistaken. The comment to Rule 720 states as follows:

> Once a sentence has been modified or reimposed pursuant to a motion to modify sentence under paragraph (B)(1)(a)(v) or Rule 721, a party wishing to challenge the decision on the motion does not have to file an additional motion to modify sentence in order to preserve an issue for appeal, as long as the issue was properly preserved at the time sentence was modified or reimposed.

Here, Appellant's post-sentence motion sought, in pertinent part, to modify the sentence as being imposed in contravention of the sentencing guidelines. In granting partial relief as to the other claims asserted in the motion, the trial court modified the probationary tail and reimposed the original term of imprisonment. Hence, having preserved the matter when the sentence was modified, Appellant was not required to file a second motion to assert a claim that the court already confronted and denied.

- 14 -

When leveled in conjunction with the assertion that the trial court failed to consider mitigating factors, a claim that the court imposed an excessive sentence raises a substantial question. *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) (*en banc*) (stating that "an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question."). Likewise, Appellant's assertion that the trial court neglected to state the reason for deviating from the sentencing guidelines also raises a substantial question. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa.Super. 2009) (allegation that trial court failed to state reasons for deviating from guidelines presents substantial question). As Appellant set forth plausible arguments that his sentence is contrary to the fundamental norms which underlie the sentencing process, we will proceed to address the merits of Appellant's claims.

The following principles apply to our substantive review of Appellant's claim. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa.Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court."

*Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). Instead, we review the trial court's determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather[,] the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

A trial court's sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Id*. at 761 (cleaned up). Finally, when the trial court has reviewed the PSI report, it is presumed that the trial court is aware of and has been informed by all appropriate sentencing factors and considerations. *Commonwealth v. Bullock*, 170 A.3d 1109, 1126 (Pa.Super. 2017).

As Appellant's prior record score was zero, the standard range minimum sentence for attempted murder was between five and six and one-half years imprisonment. The trial court imposed a minimum term of fifteen years of incarceration, which is approximately three times the standard range. Since

the sentence exceeded the sentencing guidelines, pursuant to 42 Pa.C.S. § 9781(c), we can vacate and remand if we find that the sentence outside the sentencing guidelines is unreasonable. 42 Pa.C.S. §9781(c)(3). While unreasonableness is not defined in the statute, it "commonly connotes a decision that is 'irrational' or 'not guided by sound judgment.'" ***Commonwealth v. Walls***, 926 A.2d 957, 963 (Pa. 2007).

Appellant argues that his sentence was excessive because the court did not consider his rehabilitative needs, set forth the sentencing guidelines, or state on the record the reasons for deviating from the guidelines. Appellant's brief at 33-34. As it related to his rehabilitative needs, Appellant equates the lengthy sentence to "the functional equivalent of warehousing a mentally ill person." ***Id***. at 36. He continues that the court disregarded the fact that he did not put the Commonwealth through the expense of a trial, and assumed a degree of responsibility by pleading *nolo contendere*. ***Id***. at 35.

He also maintains that the term of imprisonment is "unreasonable on its face" and describes what he deems is a reasonable sentence thusly,

> A reasonable sentence, if the plea is found by this court to be voluntary, is one which respects that Appellant took what responsibility he could for the crimes, that he expressed remorse to the victims, and that he has unique needs that are not best served by being sent into state incarceration for up to three decades when the maximum sentence under the standard range of the guidelines would be thirteen years for the attempted homicide. Appellant respectfully requests that the current sentence be vacated and that the case be remanded, with instructions, to the trial court to resentence Appellant in closer alignment with the sentencing guidelines.

Appellant's brief at 38-39.

First, the certified record establishes that the trial court was, in fact, aware of the sentencing guidelines as it referenced them generally during the sentencing proceeding. *See* N.T., Sentencing, 2/6/23 at 134. While the court did not outline the guidelines on the record, this Court has held that "there is no requirement that a sentencing court must evoke 'magic words' in a verbatim recitation of the guidelines ranges" when deviating from the sentencing guidelines. *Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa. Super. 2002). The court merely must indicate that it understands the suggested ranges. *Id*. We have held that, "when imposing a sentence, the trial court has rendered a proper 'contemporaneous statement' under the mandate of the Sentencing Code so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.'" *Commonwealth v. Beatty*, 227 A.3d 1277, 1288 (Pa.Super. 2020) (quoting *Griffin*, 804 A.2d at 8). Thus, Appellant's complaint that the trial court failed either to state the guideline ranges or provide the reason for deviating from the guidelines warrants no relief. *See Beatty*, 227 A.3d at 1288.

Appellant's assertion that the sentence is facially unreasonable fares no better. During the sentencing proceeding, the trial court explained to Appellant, "There are several things that must be considered when imposing sentence. The facts of the case, your sentencing guidelines, the impact it's

- 18 -

had upon the victims in the case, the need to protect the community and, of course, in this case, most importantly, your need for rehabilitation." N.T. Sentencing, 2/6/23, at 134. After detailing the facts of the incident and referencing Dr. O'Brien's report and the efforts of Appellant's parents to mitigate his erratic behavior, the court continued,

> So we know that given all of the information about your mental health. We also know very little was really accomplished . . . despite the best efforts . . . from your parents; they tried to get you help. That may be more of a comment on the mental health system than anything else. We know that they did try to do that, but the one thing that you have to take accountability for is your level of compliance with doctors.
>
> Notwithstanding all of those conditions, there's a certain level of compliance that we would expect from someone, and when you start self[-]medicating and using drugs, you don't get the same benefit that someone else who, otherwise, would be compliant and suffer from mental health issues.
>
> . . . .
>
> So those are the facts and some of the information I have. I do have as I pointed out earlier the presentence report which was very thorough and comprehensive and, of course, . . . your lawyer provided me with a sentencing memorandum and attachment so we know that you have . . . concerned family members and friends and many of them urged me to do the same thing and that is to put you in a hospital as opposed to jail so you can get the treatment that you need.

*Id*. at 136-38.

After outlining the impact on the victims, including members of Chief Kelly's family, and considering the need to protect the community, the court concluded,

- 19 -

You thought people were out to get you, and in my judgment that makes you very dangerous to the community because, once again, the records reflects this and your behavior reflects [that you are] incapable or unable or unwilling to comply with the treatment protocols of your providers.

So, once again, the impact of the need to protect the community is extensive as well and, of course, lastly, is your need for rehabilitation. You have had a lifelong history of mental health issues and you need significant treatment. You need, probably, lifetime treatment and you're going to need long term treatment. We can't provide that in the county, of course, nor can probation provide that with any degree of success, if you ask me.

I think it has to come from an institutional setting, and I think it needs to be in the state system. To the extent that I can, I'd like the court sheet, at some point, to complete this, to reflect that it's my recommendation that you're sentence be served at a facility that has the mental health unit or hospital unit that can address your issues. So for all of those reasons, I believe a sentence of total confinement is appropriate.

*Id*. at 140-41.

Here, the trial court properly relied on several factors in electing to impose a lengthy sentence of imprisonment, all of which demonstrated that the court followed the general principles outlined in § 9721(b). Specifically, in fashioning the judgment of sentence, the trial court referenced Appellant's PSI report, arguments made by his attorney, Appellant's mental health needs, and the nature of the offenses. *Id*. at 134-141.

Thus, contrary to Appellant's assertions, the trial court not only referenced its rationale for imposing the fifteen to thirty-years imprisonment for attempted murder, it considered Appellant's *nolo contendere* plea, history of psychiatric problems, and mitigating information in the PSI report. The

certified record confirms that the trial court considered all relevant factors and acted within its discretion drawing reasonable inferences from the facts presented. We have no authority to reweigh the mitigating circumstances against the aforementioned factors. *See Macias*, 968 A.2d at 778.

Accordingly, the trial court acted within its discretion in imposing an extended period of incarceration on Appellant for the attempted murders of Police Chief Kelly and Parole Officer Viviano. As we find no indication that the trial court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision," we discern no reason to disturb the trial court's determination. *Antidormi*, 84 A.3d at 760.

Finally, observing that a court has the power to correct an illegal sentence *sua sponte*, we review the trial court's application of 18 Pa.C.S § 1102(c) in exceeding the twenty-year statutory maximum for a first-degree felony and imposing concurrent terms of fifteen to thirty years imprisonment for the attempted murders of Police Chief Kelly and Parole Officer Viviano. *See e.g.*, *Commonwealth v. Watley*, 81 A.3d 108, 120 (Pa.Super. 2013) (*en banc*) ("Legality of sentence questions are not waivable and may be raised *sua sponte* by this Court.").

The relevant sentencing statute provides as follows:

Notwithstanding section 1103(1) (relating to [the statutory maximum twenty-year] sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or

murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S § 1102(c).

Our High Court has found that the application of § 1102(c) to enhance a sentence implicates the due process concerns and Sixth Amendment rights that the Supreme Court of the United States outlined in **Apprendi v. New Jersey**, 530 U.S. 466 (2000), which "stands for the proposition that any judicial finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." **Commonwealth v. Reid**, 867 A.2d 1280, 1281 (Pa.Super. 2005). Stated plainly, the application of an enhanced sentence for attempted murder resulting in serious bodily injury pursuant to § 1102(c) requires: (1) that the Commonwealth provide notice to the defendant; and (2) the key issue regarding the predicate serious bodily injury must be submitted to the factfinder as an element of that offense. **See, e.g., Commonwealth v. King**, 234 A.3d 549 (Pa. 2020) (relating to the due process notice component); **Commonwealth v. Barnes**, 167 A.3d 110 (Pa.Super. 2017) (*en banc*) (holding enhanced sentence for attempted murder violated **Apprendi** because serious bodily injury was not submitted to the fact finder).

While the **Apprendi** rule relates to a jury's determination of predicate facts that permit a court to exceed the statutory maximum, in **Reid**, we

applied these principles where, as here, the defendant entered a *nolo contendere* plea to attempted murder. **See Reid**, 867 A.2d at 1282. In that case, Reid pled *nolo contendere* to attempted murder after stabbing a woman eleven times and slashing her neck. The court accepted the plea and imposed seventeen to forty years of incarceration pursuant to § 1102(c). On appeal, this Court rejected Reid's contention that the sentence imposed was illegal under **Apprendi**. We explained:

> there was no jury trial and no facts ever were placed before a jury. Instead, after the prosecutor read the facts that would be proven to a jury, Appellant elected to enter a plea of *nolo contendere* to one count of attempted homicide graded as a felony of the first degree. The prosecutor explained the plea bargain to the trial court as comprising a *nolo plea* to one count of attempted criminal homicide graded as a "felony of the first degree" carrying a maximum penalty of forty years and a $50,000.00 fine. The Commonwealth agreed to accept this plea "in satisfaction to all charges" filed at four separate docket numbers. Upon the trial court's request, the prosecutor explained the facts that would be proved if the matter proceeded to trial.

*Id*. (citations and footnote omitted). Since the record demonstrated that Reid did not contest the Commonwealth's factual basis for the plea, "which indicated that the victim suffered serious bodily injury" and that the trial court explained to Reid that his sentencing exposure included the enhanced maximum sentence of forty years of imprisonment, we concluded that the record belied Reid's **Apprendi** claim. *Id*. at 1284. As for **Apprendi**'s notice component, the Reid court further reasoned that, although the Commonwealth did not formally charge Reid with attempted murder causing serious bodily injury, the trial court did not violate **Apprendi** because the information and

- 23 -

plea colloquy provided notice of the forty-year maximum sentence. *Id*. at 1285 ("The record contains no support for [Reid's] assertion that he was surprised at sentencing or that the trial court imposed a sentence in violation of *Apprendi*[.]").

Here, Appellant, like Reid, was not charged with attempted murder resulting in serious bodily injury, and although he was charged with two other offenses that required a finding of an attempt to inflict serious bodily injury, he was not provided express notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murders or to invoke the § 1102(c) maximum sentence enhancement. However, as in *Reid*, the trial court advised Appellant that he was facing a maximum penalty of forty years imprisonment on each of the attempted murder charges relating to Police Chief Kelly and Parole Officer Viviano. *See* N.T., 9/29/22, at 15. Thus, consonant with *Reid*, "Appellant was [not] misled into believing that he would only be subjected to a twenty[-]year maximum sentence." *Reid*, A.2d at 1285. Moreover, as it relates to the gunshot wounds that Police Chief Kelly sustained to his face and hand, the latter of which caused him to still lack the full range of motion as of the date of the plea hearing, the Commonwealth's factual basis for the plea sustained a finding of a resulting serious bodily injury. *See* N.T., 9/29/22, at 24, 27-28. Indeed, as we previously observed, Appellant did not contest the Commonwealth's recitation of facts underlying the *nolo contendere* plea. Accordingly, the court's application of § 1102(c)

did not violate *Apprendi* in relation to the fifteen-to-thirty-year term of imprisonment filed on the attempted murder involving Police Chief Kelly.

However, the same is not true for the concurrent fifteen-to-thirty-year term of imprisonment imposed in relation to the attempted murder of Parole Officer Viviano. Succinctly stated, the Commonwealth's presentation of facts is insufficient to support a finding of serious bodily injury. In fact, the Commonwealth did not present any facts to indicate that Parole Officer Viviano sustained bodily injury as a result of Appellant's actions. Thus, because there were no facts presented during the *nolo* plea colloquy that this victim suffered serious bodily injury, the court violated *Apprendi* in applying § 1102(c) to exceed the twenty-year maximum sentence for an attempted murder that does not result in serious bodily injury. Consequently, we vacate the judgment of sentence imposed for count two. As our disposition does not disturb the trial court's overall sentencing scheme of fifteen to thirty years of imprisonment, we do not remand for resentencing.

Judgment of sentence affirmed in part. The term of imprisonment imposed on count two is vacated. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2024